UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

**BRIAN GUTH,**

Plaintiff,

v.                                                    Case No. 2:21-cv-106-JLB-NPM

**COMMISSIONER OF SOCIAL SECURITY,**

Defendant.

---

## REPORT AND RECOMMENDATION

Plaintiff Brian Guth seeks judicial review of a denial of Social Security disability benefits. The Commissioner of the Social Security Administration filed the transcript of the proceedings (Doc. 22),[1] and the parties filed a joint memorandum (Doc. 31). As discussed in this report, the decision of the Commissioner should be affirmed.

**I.    Eligibility for Benefits and the Administration's Decision**

**A.    Eligibility**

The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically determinable physical or mental impairments that can be expected to result in death or that have lasted or can be expected to last for a continuous period of not less than

---

[1] Cited as "Tr." followed by the corresponding page number.

twelve months. [2] Depending on its nature and severity, an impairment limits exertional abilities like walking or lifting, nonexertional abilities like seeing or hearing, tolerances for workplace conditions like noise or fumes, or aptitudes necessary to do most jobs such as using judgment or dealing with people. [3] And when functional limitations preclude both a return to past work and doing any other work sufficiently available in the national economy (or an impairment meets or equals the severity criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act. [4]

## B.    Factual and procedural history

Guth applied for benefits twice. First, on December 19, 2017, Guth applied for disability insurance benefits and supplemental security income. On behalf of the administration, a state agency [5] denied these applications on March 2, 2018, and Guth did not pursue them any further. (Tr. 16, 80, 90, 102, 119).

On December 15, 2018, Guth applied again for disability insurance benefits

---

[2] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. §§ 404.1505, 416.905.

[3] *See* 20 C.F.R. §§ 404.1513(a)(2)(i)-(iv) (discussing the various categories of work-related abilities), 416.913(a)(2)(i)(A)-(D) (same), 404.1522(b) (providing examples of abilities and aptitudes necessary to do most jobs), 416.922(b) (same), 404.1545(b)-(d) (discussing physical, mental, and other abilities that may be affected by an impairment), 416.945(b)-(d) (same), 404.1594(b)(4) (defining functional capacity to do basic work activities), 416.994(b)(1)(iv) (same).

[4] *See* 20 C.F.R. §§ 404.1511, 416.911(a), 416.911(a).

[5] In Florida, a federally funded state agency develops evidence and makes the initial determination whether a claimant is disabled. *See* 42 U.S.C. § 421(a); 20 C.F.R. § § 404.1503(a), 416.903(a).

and supplemental security income. (Tr. 77-78, 215, 229). He asserted an onset date of December 15, 2016, and alleged disability due to the following: diabetes mellitus – type 2; hypertension; generalized anxiety disorder; osteoarthritis in the shoulders and legs; and major depressive disorder. (Tr. 79-80). As of the alleged onset date, Guth was 51 years old with a high school education. (Tr. 79, 378). Guth previously worked as a customer service representative, sales attendant, and dispatcher. (Tr. 71, 115, 415).

The state agency reviewed and denied Guth's application initially on February 26, 2019, and upon reconsideration on August 8, 2019. (Tr. 77-78, 99-100, 137, 148, 155). At Guth's request, Administrative Law Judge (ALJ) Raymond Rogers held a telephonic hearing on July 10, 2020 (Tr. 50-76, 181), and on August 3, 2020, the ALJ issued a decision finding Guth not disabled. (Tr. 12-43). Guth's timely request for review by the administration's Appeals Council was denied on December 14, 2020. (Tr. 1-6). Guth then brought the matter to this court, and the case is ripe for judicial review.

## C.    The ALJ's decision

The ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of

impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. §§ 404.900(b), 416.1400. Unlike judicial proceedings, Social Security Administration hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id.* Indeed, "at the hearing stage, the commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id.* (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is temporarily relieved of the burden of production during step five as to whether there are enough jobs the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *See* 20 C.F.R. §§ 404.1512, 416.912 (providing that the claimant must prove disability); *see also Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983) ("The scheme of the Act places a very heavy initial burden on the claimant to establish existence of a disability by proving that he is unable to perform his previous work."). In short, the "overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant." *Washington*, 906 F.3d at 1359 (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

At step one of the evaluation, the ALJ found Guth had worked after the alleged disability onset date, but this work activity did not generally rise to the level of substantial gainful activity. (Tr. 19). At step two, the ALJ characterized Guth's severe impairments as: degenerative disc disease of the cervical spine; degenerative disc disease of the lumbar spine status post L2 fracture; status post fracture of ulnar and radius of left upper extremity; status post index fingertip amputation; diabetes with neuropathy and retinopathy; hypertension; mild diastolic dysfunction; chronic kidney disease; obesity; anxiety; depression; adjustment disorder; and post-traumatic stress disorder. (Tr. 20). At step three, the ALJ determined Guth did not

have an impairment or combination of impairments that met or medically equaled

the severity of an agency-listed impairment. (Tr. 22).

As a predicate to step four, the ALJ arrived at the following RFC:

[T]he claimant has the residual functional capacity to: lift and/or carry 20
pounds occasionally and 10 pounds frequently; sit for six hours in an eight
hour workday; stand and/or walk for six hours in an eight hour workday; no
operation of foot controls; occasional climbing of ramps or stairs, but no
climbing ladders, ropes, or scaffolds; frequent balancing, stooping, kneeling,
and crouching; no crawling; frequent forward, lateral, and overhead reaching
with the left upper extremity; frequent handling and fingering; no exposure
to hazardous machinery or unprotected heights; able to understand,
remember, and carryout simple tasks while maintaining attention and
concentration for two hours at a time before requiring a regular scheduled
break; no fast-paced production; low stress work defined as only occasional
decision-making and only occasional changes in the work setting; and
occasional interaction with coworkers supervisors and the public.

(Tr. 28).

Consequently, at step four, the ALJ determined Guth was unable to perform

his past relevant work. (Tr. 41). At step five, the ALJ found Guth could perform

other work that exists in significant numbers in the national economy. (Tr. 41-42).

In support, a vocational expert testified that three occupations represent the kinds of

jobs an individual of Guth's age, education, work experience, and RFC can perform:

- *Cleaner*, housekeeping (DOT # 323.687-014); SVP 2; light; with 103,000
  positions in the national economy;

- *Bagger* (DOT # 920.687-018); SVP 1; light; with 11,000 positions in the
  national economy; and

- *Sandwich Board Carrier* (DOT # 299.687-014); SVP 2; light; with
  17,000 positions in the national economy.

(Tr. 42).[6] Thus, for purposes of the Act, the ALJ concluded Guth was not disabled from December 15, 2016, the alleged onset date, through August 3, 2020, the date of decision. (Tr. 42-43).

## II.   Analysis

Guth's appeal presents the following questions for review:

1) whether remand is required because the statute governing the removal of the Commissioner violated the separation of powers;

2) whether Guth has shown any prejudice attributable to the ALJ's stated refusal to reopen Guth's prior disability applications;

3) whether the ALJ properly evaluated opinion evidence;

4) whether substantial evidence supports the ALJ's finding that Guth can perform less than the full range of light work;

5) whether substantial evidence supports the ALJ's finding that Guth can perform work successfully and sustainably on a regular basis; and

6) whether the state agency suggested—and if it did, whether the ALJ was required to find—that Guth could not perform work at SVP 2.

(Doc. 31, pp. 24-25, 31, 39, 46, 49, 65).

### A.   Standard of review

The court "may not decide the facts anew, make credibility determinations, or

---

[6] The DOT numbers refer to the *Dictionary of Occupational Titles* and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work—in a purely physical sense—that the job requires, and it is divided into five categories: sedentary, light, medium, heavy, and very heavy. Skill refers to how long it takes to learn the job, and it is divided into three categories: unskilled, semiskilled, and skilled. The "SVP" (Specific Vocational Preparation) provides further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled; SVP 3 and 4 are semiskilled; and SVP 5 through 9 are skilled.

reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). While the court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the court's review of the administration's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. In other words, a "presumption of validity attaches" to the ALJ's factual findings. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). And if supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

### B.    There was no separation-of-powers violation warranting remand

Guth argues the administration's structure violates the separation of powers due to the statutory provision governing the President's authority to remove the Commissioner (42 U.S.C. § 902(a)(3)). (Doc. 31, pp. 49-52). And to the extent it is construed as limiting the President's authority to remove the Commissioner without cause, the Commissioner agrees that the removal provision is unconstitutional. (Doc. 31, p. 54). But Guth's claim was adjudicated by an ALJ whose tenure was ratified by former Acting Commissioner Berryhill, an officer removable at will and not subject to 42 U.S.C. § 902(a)(3)'s tenure protection. "Although the statute unconstitutionally limited the President's authority to remove the confirmed [Commissioner], there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the [administration] as void." *Collins v. Yellen*, 141 S. Ct. 1761, 1787 (2021); *see also id*. at 1802 (Kagan, J. concurring) ("Consider the hundreds of thousands of decisions that the Social Security Administration (SSA) makes each year. … I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone .... When an agency decision would not capture a President's attention, his removal authority could not make a difference.").

There is no indication the President attempted or desired the removal of the Commissioner while this case was pending before the administration. And Guth has

neither shown a nexus between the removal restrictions and his claim, nor has he plausibly alleged that the statutory tenure protection affected the ALJ's decision or caused him harm. For these reasons, this court, like its sister courts throughout the country, has repeatedly held this separation-of-powers argument meritless, and it should do so again here. *See Tibbetts v. Comm'r of Soc. Sec.*, No. 2:20-cv-872-SPC-MRM, 2021 WL 6297530 (M.D. Fla. Dec. 21, 2021) (report and recommendation), *no objection and adopted*, 2022 WL 61217 (Jan. 6, 2022); *see also Hultgren v. Comm'r of Soc. Sec.*, No. 2:20-cv-892-SPC-NPM, 2022 WL 1085547 (M.D. Fla. Feb. 9, 2022) (report and recommendation), *overruling objections and adopted*, 2022 WL 736176 (Mar. 11, 2022); *Frank v. Comm'r of Soc. Sec.*, No. 2:20-cv-962-SPC-NPM, 2022 WL 598036 (M.D. Fla. Feb. 10, 2022) (report and recommendation), *no objection and adopted*, 2022 WL 596833 (Feb. 25, 2022).

**C.   Guth has failed to develop any argument about reopening, and even if he did, any error would be harmless**

Guth claims the ALJ implicitly reopened his prior disability application but failed to consider the entire period covered by the prior decision. (Doc. 31, pp. 65-67). The ALJ considered Guth's request to reopen his prior disability applications, and expressly refused to reopen them. (Tr. 16). But a "final decision by the Secretary will be deemed [constructively] reopened if it is 'reconsidered on the merits to any extent and at any administrative level.'" *Passapulos v. Sullivan*, 976 F.2d 642, 645-

646 (11th Cir. 1992) (citations omitted); *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996) (same, quoting *Passapulos*).

Regardless, Guth does not state what the alleged onset date was in his prior applications. Also, the alleged onset date of Guth's prior applications is not readily apparent from the record. Neither does Guth explain what alleged impairments were at issue in his prior disability applications or whether they overlap with the impairments at issue here. Thus, these undeveloped arguments are forfeited. *See Access Now, Inc. v. Sw. Airlines*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

Moreover, Guth's arguments fail to establish error. Even if the ALJ constructively reopened Guth's prior application, any error would be harmless. When "an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand." *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)).

First, Guth does not contend that his disability began before December 2016. And his earnings records indicate he performed substantial gainful activity in 2016 (over $43,000 in earnings) and prior years, which would preclude a finding of disability before this alleged onset date. (Tr. 268); *see* 20 C.F.R.

§§ 404.1520(a)(4)(i), 404.1572, 416.920(A)(4)(i), 416.972. Thus, Guth could not have claimed an earlier onset date in his previous applications because he could not have established disability prior to December 2016 based on his earnings.

Second, Guth does not allege that the record before the ALJ in adjudicating his *current* claims was incomplete or missing evidence, such that any prejudice or evidentiary gaps occurred when the ALJ denied reopening and did not consider the actual file for his 2017 applications. Because his 2017 claims were denied at the initial level, and he did not seek reconsideration or an ALJ hearing, the 2017 claim file would have been minimally developed. And even if the previous applications had an earlier onset date and concerned overlapping impairments, Guth has failed to argue or show there was a prejudicial gap in the evidence before the ALJ.

In sum, Guth's noticeably coy argument fails to establish any prejudice attributable to the ALJ's refusal to reopen Guth's prior disability applications. And any error from explicitly denying reopening while implicitly doing so appears entirely harmless. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (explaining "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination").

**D.  The ALJ provided substantial evidence for finding certain opinions unpersuasive**

Guth claims the ALJ erred by finding unpersuasive the opinions of his treating providers: primary care physician, Tracy Vo, D.O.; orthopedic surgeon, Camilo

Guzman, M.D.; and Eva Smidova, Ph.D., LMFT.[7] By rejecting the opinions of his treating providers, Guth claims the ALJ substituted his own medical judgment for that of the medical experts. (Doc. 31, pp. 31-35).

For disability cases filed on or after March 27, 2017—such as this one—the term "medical opinion" is no longer defined to include a diagnosis, prognosis, or judgment about the nature and severity of an impairment. Rather, it refers only to statements about what the claimant can still do despite any impairment(s), and whether there are any limitations in the claimant's abilities to perform the various demands of work or adapt to work-related conditions. *See* 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). Furthermore, medical opinions related to claims filed on or after March 27, 2017, are subject to a different assessment about their persuasiveness rather than their weight. *See* 20 C.F.R. §§ 404.1520c, 404.1527(c), 416.920c, 416.927(c).

Because a disability finding hinges on functional limitations and not just the existence of impairments, the ALJ needed to assess the opinions about Guth's abilities despite, and limitations because of, his impairments. *See* 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). These opinions are assessed for their persuasiveness based on the following five factors, with the first two being the most

---

[7] LMFT stands for Licensed Marriage and Family Therapist. (Tr. 1274).

important: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, frequency, and purpose of the examining and any treatment relationship; (4) specialization; and (5) other factors, such as the source's familiarity with other evidence concerning the claim, that tend to support or contradict the medical opinion. 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c). The providers' judgments about the nature and severity of Guth's impairments, medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis merely constitute "other medical evidence" in the record. 20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(3).

The ALJ found these opinions unpersuasive using the applicable regulatory framework and adequately articulated reasons for finding the opinions unpersuasive. (Tr. 39-40). Still, Guth attacks some of the ALJ's reasoning. Even if the court were to agree with Guth that certain reasons the ALJ provided were somehow incorrect, the ALJ provided other reasons Guth does not attack, and that would still be enough to meet the substantial evidence standard.

As for Dr. Vo's opinions, Guth challenges three of the five reasons provided by the ALJ for finding these opinions unpersuasive. In July 2019, Vo opined that Guth could, in effect, perform less than a sedentary range of work and would require frequent breaks during the workday. (Tr. 39, 1148-1149). However, less than a year later in April 2020, Vo medically released Guth back to work, which undermined

her prior opinion of work-precluding limitations. (Tr. 39, 1209); *see* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) (consistency factor). Guth claims he was only cleared to return to part-time work, which is not inconsistent with an inability to perform full-time work.[8] However, Guth provides no support for his position and the ALJ did not err in finding an inconsistency.

The ALJ also found Vo's opinion inconsistent with objective findings of Guth's treating endocrinologist, Dr. Drimoussis, who generally found Guth was doing well despite his generally uncontrolled diabetes and low compliance. (Tr. 39 (citing Tr. 946-963, 1311-1360)). Guth claims Vo's opinions were not inconsistent with Drimoussis's findings that Guth was "doing well" because of his references to hospital visits, "less" blurred vision, slurred speech, type 2 diabetes mellitus uncontrolled, mixed hyperlipidemia, chronic kidney disease stage 3, and end-stage renal disease. Although Guth points to observations in Drimoussis's treatment notes to show positive symptoms and diagnoses, the ALJ likewise pointed to the same notes for many unremarkable examination findings. The ALJ did not misrepresent the record.

Guth's third challenge concerns the ALJ's finding Vo's opinion generally inconsistent with Guth's high functioning activities of daily living, which include

---

[8] Also, Guth's attorney raised this issue during the ALJ hearing. (Tr. 57). So, it appears the ALJ implicitly discounted this argument.

working—at least part-time—at various jobs and helping his elderly, sick parents with activities like cleaning, cooking, and medication management. (Tr. 39). Guth perfunctorily claims Vo's opinion is not inconsistent with his activities of daily living, but provides no support and makes no effort to explain why. The ALJ did not misrepresent Guth's activities of daily living (*see* Tr. 58, 67-70), and Guth's undeveloped challenge has no merit. Guth raises this same issue about activities of daily living with respect to Guzman's and Smidova's opinions, and it is baseless for the same reason. (Doc. 31, pp. 32-33).

As for Dr. Guzman's opinions in May 2019, the ALJ provided four reasons for finding them unpersuasive, only two of which Guth challenges. Besides the daily-activities reason discussed above, Guth challenges the ALJ viewing Guzman's opinions in context. The ALJ reasoned that Guzman's opinions related to a period of recovery following surgery. (Tr. 40). Guth claims Guzman's opinions did not specifically state they were of a limited duration but does not elaborate further.

For context, Guth was injured around March 22, 2019, following a motor vehicle accident. (Tr. 992, 996). A few days later, Guzman performed a surgical procedure to treat Guth's left forearm fracture. (Tr. 1011). Guth did well post-operatively and remained neurovascularly intact; he was deemed stable for discharge. (Tr. 997). During post-op follow up visits on April 11 and May 21, 2019, Guth had normal sensory responses to light touch and good range of motion on

flexion and extension of the elbow in the left arm, along with good range of motion on pronation and mild stiffness on supination (Tr. 1135, 1137). During the May 2019 follow up visit, Guzman remarked that Guth was progressing nicely and should avoid lifting anything over five pounds with his left upper extremity. (Tr. 1135). The ALJ did not err in considering the medical evidence as a whole, including the circumstances of Guzman's lifting opinions following surgery. *See* 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3) (factors relating to treating relationship with the claimant). Nor has Guth shown any error.

Finally, as for Dr. Smidova's opinions in June 2020, the ALJ provided roughly six reasons why he found her opinions unpersuasive. However, Guth merely recites three of these reasons and does not actually challenge them. (Doc. 31, p. 33).[9] Thus, any challenge to the ALJ's treatment of Smidova's opinions is forfeited. *See Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 n.1 (11th Cir. 2013) (noting claimant forfeited arguments by not expressly challenging ALJ's findings); *Access Now, Inc. v. Sw. Airlines*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

The ALJ provided substantial evidence for finding unpersuasive the particular

---

[9] Guth also discusses Dr. Smidova's opinions for a separate issue about whether he can perform work successfully and sustainably on a regular basis. (Doc. 31, pp. 40-42). But even there he fails to actually contest the ALJ's treatment of these opinions as being unpersuasive.

opinions of Dr. Vo, Dr. Guzman, and Dr. Smidova. Guth has pointed to no evidence that the ALJ impermissibly substituted his own uninformed medical evaluations for those of medical professionals. *Cf. Clay v. Comm'r of Soc. Sec.*, No. 19-81103-CIV, 2021 WL 1198300, *13-14 (S.D. Fla. Mar. 30, 2021) (finding "ALJ impermissibly discounted the medical evidence indicating that Plaintiff was disabled and instead offered bizarre suggestions which, he seemed to believe, would cure her."). The assessment of a claimant's RFC is within the exclusive province of the ALJ. *See* 20 C.F.R. §§ 404.1546(c) 416.946(c); *accord Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's [RFC] is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive"). And an ALJ does not impermissibly assume the role of a doctor by viewing the record evidence as a whole and making an RFC determination. *See Castle v. Colvin*, 557 F. App'x 849, 853 (11th Cir. 2014) ("[T]he ALJ did not 'play doctor' in assessing Mr. Castle's RFC, but instead properly carried out his regulatory role as an adjudicator responsible for assessing Mr. Castle's RFC.").

### E.   The ALJ provided substantial evidence for finding Guth can perform less than the full range of light work

Guth claims the ALJ should have limited the RFC to sedentary work because (1) she cannot operate foot controls, (2) Dr. Vo opined Guth could occasionally lift less than 10 pounds and stand or walk less than two hours, (3) Dr. Guzman limited

him to lifting no more than five pounds with his left hand, and (4) the evidence indicated that standing or walking aggravated the pain in his knees. According to Guth, he is unable to perform light work and would "grid out" at step five. (Doc. 31, pp. 24-27).[10]

Before step four, the ALJ must assess the claimant's RFC, which is the most a claimant can still do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). It consists of a claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [a claimant] can do in a work setting." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). An ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1) & (3), 416.920(e), 416.945(a)(1) & (3). So, the ALJ must consider *all* of the claimant's medically determinable impairments, including those that are not "severe." 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

---

[10] At step five, an ALJ must determine whether a claimant can adjust to other work sufficiently available in the economy based on age, education, work experience, and RFC. 20 C.F.R. §§ 404.1520(a)(4)(v) & (g), 404.1560(c), 416.920(a)(4)(v) & (g), 416.960(c). The administration has adopted rules to account for the decreased likelihood of adjusting to a new job with increasing age that—in combination with other factors—provide a regulatory conclusion that there is an insufficient number of jobs to which the claimant could adjust. *See* 20 C.F.R. §§ 404.1569, 416.969; 20 C.F.R. Pt. 404, Subpt. P, App. 2. These rules generate "grids," with each grid based on whether the claimant's RFC allows for the full range of occupations classified as sedentary, light, or medium on the physical exertion scale.

As discussed above, the ALJ found Dr. Vo's and Dr. Guzman's opinions unpersuasive. Guth, relying on Dr. Vo's unpersuasive opinion, also asks the court to reweigh the evidence about his standing and walking limitations. But the court may not reweigh the evidence. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). Moreover, an inability to operate foot controls does not preclude a finding that a claimant can otherwise perform light work. Relatively few light jobs are performed in a seated position, but when a light job involves sitting most of the time, it usually involves some pushing and pulling of arm-hand or leg-foot controls at greater exertion levels (weight) than sedentary work. SSR 83-10, 1983 WL 31251, *5 (1983). SSR 83-10 does not state that a significant number of light jobs require the ability to operate foot controls, nor has Guth cited any authority stating as much.

Here, the ALJ limited Guth to light work with several exertional, postural, manipulative, environmental, and mental limitations. So, the RFC was for a reduced range of light work. (Tr. 28). Since the occupational base for light work had been eroded, the ALJ had to consult a vocational expert to determine how many jobs, if any, were available for an individual with Guth's vocational profile and RFC. An ALJ may rely upon a vocational expert's knowledge or expertise. *Bryant v. Comm'r of Soc. Sec.*, 451 F. App'x 838, 839 (11th Cir. 2012); *see* 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). A vocational expert "is an expert on the kinds of

jobs an individual can perform based on his or her capacity and impairments." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). Given the eroded light occupational base, the ALJ properly consulted a vocational expert using comprehensive hypothetical questions that contained limitations that were eventually incorporated into the RFC. (Tr. 63-65); *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) ("In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." (quoting *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)).

The ALJ properly relied on a vocational expert instead of the grids because the RFC finding included limitations that eroded the occupational base for light jobs. The grids direct a disability determination only when an individual's exertional RFC coincides with the ranges of work as defined in the regulations (20 C.F.R. §§ 404.1567, 416.967) and the occupational base is clearly not affected. *See* SSR 83-12, 1983 WL 31253, *2 (1983). If the RFC includes limitations that might erode the number of jobs available under a certain grid rule and the extent of the erosion is unclear, then the ALJ must consult a vocational expert, and the grids can only be used as a framework. *See id.* Guth has shown no error in the ALJ's RFC determination.

**F.     The ALJ provided substantial evidence for finding that Guth can perform work successfully and sustainably on a regular basis**

Guth argues the limitations identified by the state agency on reconsideration (Nicole Mannis, Psy. D.) and by Dr. Smidova show he is unable to perform work successfully and sustainably on a regular basis. (Doc. 31, pp. 39-42). However, the ALJ found Smidova's opinions unpersuasive, as discussed earlier.

As for Dr. Mannis's opinions, the ALJ found her opinion persuasive. Guth focuses on Mannis's opinion that Guth was moderately limited in the abilities to maintain attention and concentration for extended periods; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; and respond appropriately to changes in the work setting (Tr. 130-131). Although the ALJ found her opinions persuasive, Guth claims the ALJ committed reversible error by failing to reflect these limitations in the RFC.

But this isn't the full picture. In finding her opinions persuasive, the ALJ acknowledged Mannis's explanation. There, Mannis explained that Guth's mental health issues would not preclude the completion of simple tasks, and that he had the abilities to understand, retain, and carryout simple instructions; consistently and usefully perform routine tasks on a sustained basis with normal supervision; cooperate adequately with others in completing simple tasks and transactions in a

low social demand setting; adapt over time to most changes in task demands; make simple decisions and take appropriate precautions for normal hazards. (Tr. 132).

ALJs consider prior administrative medical findings but they are prohibited from deferring to such findings. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). And finding an opinion persuasive also does not mean it is controlling. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ—not a state agency consultant—is ultimately "responsible for reviewing the evidence and making administrative findings of fact and conclusions of law." 20 C.F.R. §§ 404.1513a(b), 416.913a(b). The regulations do not require ALJs to adopt into an RFC every part of an opinion that they otherwise find persuasive. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a); *see also Freyhagen v. Comm'r of Soc. Sec.*, No. 3:18-cv-1108-J-MCR, 2019 WL 4686800, *8 (M.D. Fla. Sept. 26, 2019). Rather, the assessment of a claimant's RFC is within the exclusive province of the ALJ. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c); *accord Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's [RFC] is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive").

The ALJ properly considered the opinion evidence. He was not required to account for Dr. Smidova's unpersuasive opinions in the RFC, nor was he required to mirror every limitation from the state agency reconsideration opinion. Even so,

the ALJ formulated an RFC with mental limitations, including those that account for the attention, concentration, and social limits opined by Dr. Mannis. (Tr. 28).

### G. The state agency did not suggest, and even if it did the ALJ was not required to find, that Guth could not perform work at SVP 2

Guth argues the ALJ erred by finding he could perform work at SVP 2 despite a statement from the state agency suggesting Guth could only perform work that requires a short, on-the-job training period, which Guth equates to SVP 1. (Doc. 31, pp. 46-48). This argument has no merit. *See Hultgren v. Comm'r of Soc. Sec.*, No. 2:20-cv-892-SPC-NPM, 2022 WL 1085547, *10 (M.D. Fla. Feb. 9, 2022), *report and recommendation adopted*, 2022 WL 736176 (Mar. 11, 2022).

As the Commissioner pointed out, Guth's argument is vague as to where the agency limited him this way because Guth cited to his signed fee agreement. (Doc. 31, p. 46 (citing Tr. 135)).[11] Upon review of the record, it appears Guth relies on the state agency's August 9, 2019 explanation of determination, which said that Guth could perform work that requires "a very short, on-the-job training period." (Tr. 440 (citing Tr. 154, 161)).

An ALJ is not bound by prior administrative decisions. In fact, the administration's regulations state that findings made by a state disability examiner

---

[11] This oversight indicates that plaintiff counsel did not read or consider the Commissioner's portion of the brief before agreeing to file the joint memorandum, which violates the requirements of the scheduling order.

at a previous level of adjudication about a vocational issue are inherently neither valuable nor persuasive. *See* 20 CF.R. §§ 404.1520b(c)(2), 416.920b(c)(2). So, the ALJ was not bound by any state-agency notice suggesting Guth could only perform work involving a short, on-the-job training period. Rather, the ALJ had to make his own determination, which was done here.

Furthermore, there is no inconsistency between SVP 2 and a very short, on-the-job training period. Using the skill level definition in 20 C.F.R. §§ 404.1568(a) and 416.968(a), unskilled work corresponds to an SVP of 1 and 2. SSR 00-4P, 2000 WL 1898704, *3 (2000). An SVP 1 job means someone can become sufficiently familiar with its necessary skills by simply watching a "short demonstration only," whereas an SVP 2 job requires "[a]nything beyond short demonstration up to and including 1 month." *Garrow v. Saul*, No. 5:19-cv-586-Oc-18JBT, 2020 WL 5802493, *4 n.6 (M.D. Fla. Aug. 19, 2020) (citing Appendix C - Components of the Definition Trailer, Dictionary of Occupational Titles, 1991 WL 688702 § II (4th ed., rev. 1991)), *report and recommendation adopted*, 2020 WL 5797867 (Sept. 29, 2020). The definition of SVP 1 omits any reference to a training period. Thus, the reference to a "training period" at the state-agency level corresponds with SVP 2.

## III.   Conclusion

Upon consideration of the submissions of the parties and the administrative record, substantial evidence supports the ALJ's decision and there was either no

error or no harmful error in the ALJ's application of the correct legal standard.

Accordingly, the decision of the Commissioner should be **AFFIRMED** pursuant to

sentence four of 42 U.S.C. § 405(g), and the Clerk of Court should be directed to

enter judgment in Defendant's favor.

Respectfully recommended on August 5, 2022.

NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections "waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." *See* 11th Cir. R. 3-1. **To expedite resolution, parties may file a joint notice waiving the 14-day objection period.**